USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-18-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD E. BROWN,

                Plaintiff,

- against -

TIME WARNER CABLE INC., et al.,

                Defendants.

REPORT AND
RECOMMENDATION

10 Civ. 8469 (PAC) (RLE)

To the HONORABLE PAUL A. CROTTY, U.S.D.J.:

## I. Introduction

*Pro se* Plaintiff Edward Brown brings this employment discrimination action against Defendants Time Warner Cable Inc. ("TWC") and Julio Larrosa, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* Brown alleges, in part, that Defendants terminated him in retaliation for a complaint that he filed against them with the New York State Department of Human Rights. Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915(e)(2)(B)(I). For the reasons that follow, I recommend that Defendants' motion be **GRANTED**, in part, and **DENIED**, in part.

## II. Background

For purposes of deciding this motion, the Court assumes that the following factual allegations in the Complaint are true.[1] In June 2008, TWC offered Brown a job as a Regional

---

[1] Although the Court primarily relies upon the allegations and exhibits contained in Brown's Amended Complaint, the Court also relies upon records incorporated by reference in the Amended Complaint. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). For instance, Brown's allegations relate to a complaint he filed with the NYSDHR, and the Court relies upon records related to the proceedings before the NYSDHR that were submitted by Defendants. *See Evans v. New York Botanical Garden*, No. 02 Civ. 3591, 2002 WL 31002814

Network Operations Center Operator ("RNOC Operator") in TWC's Flushing, New York office, contingent upon the satisfactory completion of a criminal background check. (Am. Compl., Ex. 8.) TWC hired a third party, General Information Services ("GIS"), to conduct Brown's background check, and the check mistakenly reported that Brown had a felony conviction for criminal possession of a controlled substance. (*Id.* at 5 and Exs. 6, 13.) On July 14, 2008, TWC rescinded Brown's offer of employment because Brown had not disclosed the conviction on his employment application. (*Id.* at 5.) Brown complained about the background check to GIS, and GIS removed the conviction after they confirmed that Brown had not been convicted of a felony. (Am. Compl. at 5; Decl. of Nathan Chapman ("Chapman Decl."), Ex. H.)

On March 13, 2009, Brown filed a complaint of discrimination with the New York State Division of Human Rights ("NYSDHR") arising from TWC's failure to hire him based upon the erroneous report of a felony conviction. (Chapman Decl., Ex. H.) Shortly thereafter, TWC determined that Brown's criminal conviction had been removed from his record, and offered him a position as a RNOC Operator on March 26, 2009. (Am. Compl. at 5 and Ex. 13.) NYSDHR dismissed Brown's charge on April 23, 2009. (Chapman Decl., Ex. J.)

Brown began a ninety-day probationary period at TWC on April 17, 2009. (Am. Compl. at 5 and Ex. 10.) Brown alleges that shortly after he began work at TWC, Defendants undermined his performance in various ways in retaliation for his filing the NYSDHR complaint. (*See id.* at 5-7.) TWC assigned Luis Caldera to train Brown during his probationary period. (*Id.* at 5) Brown alleges that Caldera never provided him with constructive feedback. (Response to Defendants' Mot. to Dismiss ("Response"), at 5.) Although Caldera repeatedly

---

(S.D.N.Y. Sept. 4, 2002) (relying upon NYSDHR filings when considering a motion to dismiss); *Cole v. Central Park Systems, Inc.*, No. 09 Civ. 3185, 2010 WL 3747591, at *4 (E.D.N.Y. Sept. 20, 2010).

told Brown that he was performing well, Caldera sent Larrosa, Brown's supervisor at TWC, an email on May 7, 2009, that stated that Brown needed to improve his performance. (Am. Compl. at 6 and Ex. 13 at 2.)

As part of his job, Brown was required to enter data into a computer program. (Am. Compl. at 6.) Brown alleges that Defendants provided him with a computer with software that failed to properly record data he entered. (*Id.*) After Brown complained about the defective software, Caldera attempted to use his computer and encountered similar results. (*Id.*) Defendants installed a program onto his computer that fixed the problem, and Brown was able to complete his work. (*Id.*) Shortly thereafter, Brown alleges that Defendants removed or degraded the new software so that it did not function properly and he was unable to complete his assigned work. (*Id.*)

Larrosa had at least three conversations with Brown about his performance during his probationary period, and informed him that he was not meeting expectations. (Am. Compl. at 5-6 and Ex. 13.) On July 17, 2009, at the end of Brown's probationary period, Larrosa completed a job evaluation that stated that Brown's overall performance was unacceptable, and recommended that he not be offered permanent employment. (*Id.*, Ex. 5.) After Larrosa's negative performance review, Brown contends that Defendants' discriminatory conduct intensified, and his job responsibilities were reduced to answering the phones and writing "Remedy tickets." (*Id.* at 6.) On July 21, 2009, TWC terminated his employment. (*Id.*)

On July 22, 2009, Brown filed a second complaint with NYSDHR alleging that TWC discriminated against him during his employment and terminated him in retaliation for his

3

previous complaint.[2] (Chapman Decl., Ex. B.) On September 3, 2010, Brown obtained a Dismissal and Notice of Rights letter from the Equal Employment Opportunity Commission, and he filed this action on November 1, 2010.

### III. Discussion

### A. Motion to Dismiss Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations, but must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 1949-50. Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard. *Id.* at 1950.

When a plaintiff is *pro se*, the court should apply "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even after *Iqbal*, which imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

---

[2] Brown's Amended Complaint contains a number of attachments, including a three-page factual summary and nine exhibits. The exhibits are consecutively numbered, and begin with "Exhibit 5" and end with "Exhibit 13." Although the factual summary refers to an "Exhibit 4," which purportedly establishes that Brown received certain job training from TWC, no such exhibit is attached to the Amended Complaint.

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54. The court may also consider documents necessarily relied upon by the plaintiff in drafting the complaint. *Id.* at 153-54.

## B. Application

Construing Brown's Amended Complaint in the light most favorable to him, Brown alleges that he suffered three types of employment discrimination. First, he alleges that Defendants discriminated him based upon his race and color with respect to hiring, training, termination, and other terms and conditions of employment. Second, he alleges that Defendants retaliated against him based on his decision to file a complaint with NYSDHR. Third, he alleges that he was subjected to a hostile work environment at TWC. (*See* Response at 4) ("The discrimination based upon race starts with the 'unearned' fraudulent felony conviction resulting in 'character assassination' creating an environment full of discrimination consequently leading to a hostile work environment of preconceived notions.") Defendants contend that Brown's retaliation claim should be dismissed because it is implausible and that his disparate treatment claim should be dismissed because he has failed to allege the facts necessary to support such a claim. (Mem. in Supp. of Defendants' Motion to Dismiss ("Defs. Mem.") at 7, 9.)

### 1. Brown's Retaliation Claim

"In order to establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004). "To establish causation, a plaintiff must show that the protected speech was a substantial motivating

factor in the adverse employment action . . . ." *Cioffi v. Averill Park Cent. Schl. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal citations omitted). A plaintiff may establish causation directly, "by evidence of retaliatory animus against plaintiff," *Heffernan v. Straub*, 612 F. Supp. 2d 313, 328 (S.D.N.Y. 2009), or "indirectly by showing that his speech was closely followed in time by the adverse employment decision." *Cioffi*, 444 F.3d at 168 (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001).

The Court finds that Brown has pled a plausible retaliation claim. Brown has pled sufficient facts to establish the first two elements of a retaliation claim. He engaged in protected activity by filing a complaint with the NYSDHR, and he suffered adverse employment actions when TWC made his working conditions difficult and terminated his employment. The Court also finds that Brown has alleged facts sufficient to establish a causal connection between his complaint and the adverse employment actions. Defendants were aware of Brown's complaint, and approximately four months elapsed between his complaint and his termination, a time period generally accepted by this Circuit as supporting an inference of causation. *See, e.g., Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that a six-month lapse between plaintiff's protected First Amendment activity and the allegedly retaliatory conduct supported an inference of causation); *Lindner v. Int'l Business Machines Corp.*, No. 06 Civ. 4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct"); *McKenzie v. Nicholson*, 2009 WL 179253, at *5 (E.D.N.Y. 2009) (holding that plaintiff stated a plausible retaliation claim sufficient to survive a motion to dismiss despite a thirteen-month gap between the protected activity and the retaliatory conduct). In addition to the temporal proximity between his

complaint and his termination, Brown has alleged that immediately after he started working, Defendants provided him with inadequate training and working conditions in retaliation for his complaint so that he would perform poorly at work, thereby giving the Defendants cause to terminate him at the end of his probationary period. (Am. Compl. at 6; Response at 4-6.) Liberally construed, the allegations provide additional support for the inference that Defendants retaliated against him.

Defendants contend that Brown has failed to establish a causal connection between his protected activity and the adverse employment action because their offer of employment to Brown was inconsistent with retaliatory intent. (Defs. Mem. at 7-8.) Defendants argue that "[i]t would defy 'judicial experience and common sense' to accept as plausible Brown's theory that TWC would offer him employment while he had a pending discrimination claim against it – and in doing so provide him with an opportunity to make additional accusations against TWC or its employees – to allow it to have the opportunity to retaliate against him." (Defs Mem. at 8 (quoting *Iqbal*, 129 S.Ct. at 1950).) The Court disagrees. Defendants' offer of employment is not necessarily inconsistent with retaliatory intent. The offer of employment came less than two weeks after Brown filed his complaint with the NYSDHR. At this early stage in the proceedings, it is not improbable that Defendants – recognizing that Brown may have had a strong hiring-discrimination claim – offered him the job to undermine his complaint, and that they intended to terminate as soon as the complaint was dismissed and his probationary period was over. Brown alleges, for example, that he was not provided with proper tools and that other aspects of his working environment were setting him up for failure. Indeed, less than a week after Brown started work, his complaint was dismissed, and he was subsequently terminated for poor work performance at the end of his probationary period.

In sum, the Court finds that Brown has pled adequate facts for the Court to infer a plausible causal connection between his protected conduct and his termination based upon the temporal proximity between the events and Defendants' alleged conduct following the complaint. The Court therefore finds that Brown has stated a plausible retaliation claim, and recommends that Defendants' motion to dismiss this claim be **DENIED**.

### 2. Brown's Disparate Treatment Claims

In order to establish a *prima facie* case of disparate treatment, a plaintiff bears the initial burden of establishing: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment decision was made under circumstances giving rise to an inference of discrimination on the basis of membership in a protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (citing *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).

Here, Brown, an African-American, is a member of a protected class. He suffered an adverse employment action when he was terminated, and he has alleged additional facts to establish that he may have suffered an adverse employment action with respect to his training program and the terms and conditions of his employment. For instance, Brown alleges that he was intentionally provided inadequate equipment to successfully complete his assigned job tasks. (*See* Am. Compl. at 5-7.) Although Brown submitted a performance evaluation that stated that his job performance was unacceptable, his job performance is inextricably linked with his allegation that he wasn't provided sufficient tools to complete his tasks. Accordingly, Brown has pled sufficient facts to establish the first three elements of a *prima facie* case for his disparate treatment claim.

The Court finds, however, that Brown has failed to plead sufficient facts that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination on the basis of his membership in a protected class. Beyond checking a box in his Amended Complaint that he was discriminated against on the basis of his race and color, Brown makes no factual allegations to allow the Court to infer that he was discriminated against on such a basis. On the contrary, Brown alleges that Defendants' discriminatory behavior was motivated by their mistaken belief that he was a convicted felon and by his decision to file a complaint against them. Brown does not allege that TWC was responsible for the false conviction appearing on his background check, and does not assert that Defendants knew that the conviction was false prior to rescinding their initial offer of employment. According to Brown, the false report and his subsequent complaint created an "atmosphere of suspicion, mistrust, uncertainty and doubt" throughout his employment with TWC that ultimately led to his termination. (Am. Compl. at 5.) Neither of these alleged motivations, however, relate to Brown's race or color. Brown provides no evidence of TWC treating similarly situated individuals differently, which might provide a basis for the Court to infer that he was treated differently based upon his race. In fact, the allegations indicate that TWC had a policy not to employ individuals who failed to report felony convictions on their employment applications, which was the basis for TWC rescinding their initial offer. When TWC learned that the background check was inaccurate, they re-offered Brown the job. Although Brown alleges that he was treated differently after he started work, he fails to allege any facts that connect the discriminatory treatment to his race or color. Accordingly, to the extent that Brown alleges a disparate treatment claim, I recommend that Defendants' motion to dismiss be **GRANTED**.

### 3. Hostile Work Environment Claim

Although the Amended Complaint does not explicitly allege discrimination based on a hostile work environment, in his response, Brown alleges that he experienced "an environment full of discrimination" and a "hostile work environment" (Response at 4.), and the Amended Complaint alleges facts from which the Court infers the pleading of such a claim. Title VII is violated when a work environment is so permeated with "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift*. To establish a hostile work environment, a plaintiff must demonstrate that he was subjected to hostility because of his membership in a protected class. *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007). A workplace will not be considered hostile if the environment is equally intimidating or offensive for both members and non-members of plaintiff's protected class. *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

As discussed above, Brown has failed to make any factual allegations that he was subject to racially motivated intimidation or ridicule, or that he was treated differently than other similarly situated employees. Although Brown alleges that Defendants discriminated against him on the basis of an erroneously reported felony conviction and his decision to file a complaint with the NYSDHR, he fails to allege facts to allow the Court to infer that the discrimination was connected to his race or color. Accordingly, the Court finds that the allegations are insufficient to support a plausible inference that Brown was subjected to an abusive working environment because of his race and color. Therefore, to the extent that Brown alleges a hostile work environment claim, I recommend that Defendants' motion to dismiss be **GRANTED**.

## IV. CONCLUSION

In conclusion, I recommend that Defendants' Motion to Dismiss be **GRANTED**, in part, and **DENIED**, in part.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**SO ORDERED this 18th day of July 2011**
**New York, New York**

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Order were sent to:**

| Plaintiff | Counsel for Defendant |
|---|---|
| Edward Brown | Arthur Patrick Xanthos |
| P.O. Box 1147 | Gartner Bloom & Greiper, P.C. |
| Long Island City, NY 11101 | 801 2nd Avenue, 15th floor |
| | New York, NY 10017 |

11